# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

DASHAUN M. McCRAY

*Plaintiff-Appellant,*

*v.*

DOUGLAS A. COLLINS, in his official capacity
as Secretary of the United States Department of Veterans Affairs,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Kansas (No. 22-CV-2154-DDC-ADM)
The Honorable Daniel D. Crabtree, United States District Judge

## BRIEF OF APPELLEE

DUSTON J. SLINKARD
*Acting United States Attorney*
*District of Kansas*

BRIAN E. VANORSBY, KS. S.CT. # 27606
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS 67202
Tel: (316) 269-6481
Fax: (316) 269-6484
Email: brian.vanorsby@usdoj.gov
*Attorneys for Appellee*

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS.............................................................x

JURISDICTIONAL STATEMENT ........................................................1

ISSUE PRESENTED...........................................................................2

STATEMENT OF THE CASE...............................................................3

SUMMARY OF ARGUMENT ..............................................................9

ARGUMENT AND AUTHORITIES.....................................................11

I.   Standard of Review. ....................................................................11

II.  The district court correctly held that McCray cannot rely on a continuing
violation theory because she did not claim retaliatory harassment..............12

   A.   McCray waived appellate review of Magistrate Judge Mitchell's finding
that McCray did not assert a retaliatory harassment claim in her
Complaint. ............................................................................12

   B.   The district court correctly concluded that McCray cannot rely upon a
continuing violation theory to support her remaining discrimination and
retaliation claims. ...................................................................16

III.  The district court correctly granted summary judgment on the claims
brought by McCray that were not timely or properly exhausted. ................18

   A.   The district court correctly granted summary judgment on McCray's
discrimination and retaliation claims that were not exhausted within 45
days of the alleged event. ........................................................19

i

B. McCray's discrimination and retaliation claims against Dr. Cummings are not reasonably related to the allegations contained in her EEO Charge.................................................................................21

IV. The district court correctly granted summary judgment on McCray's employment discrimination claim because McCray did not suffer a personnel action or establish an inference of discrimination. ....................24

A. Federal sector Title VII employment discrimination claims under Section 2000e-16(a) are limited to personnel actions. ..........................................25

B. The district court's decision to grant summary judgment should be affirmed because the exhausted allegations of discrimination are not "personnel actions."...................................................................................28

C. The district court's decision to grant summary judgment should be affirmed because the uncontroverted facts do not give rise to an inference or finding of discrimination....................................................................35

V. The district court correctly granted summary judgment on McCray's retaliation claim. ........................................................................................40

A. The district court correctly concluded that McCray failed to demonstrate that she suffered a materially adverse employment action. ....................41

B. The district court correctly concluded that McCray failed to establish that Duda had knowledge of her alleged protected activity. ...........................44

VI. The district court applied the correct summary judgment standard and did not find facts "against McCray."..................................................................48

CONCLUSION ........................................................................................................50

CERTIFICATE OF COMPLIANCE ......................................................................51

CERTIFICATE OF SERVICE ...............................................................................52

# TABLE OF AUTHORITIES

**Cases**                                                                   **Pages(s)**

*Anschutz Land & Livestock Co. v. Union Pac. R. Co.*,
    820 F.2d 338 (10th Cir. 1987) ................................................................ 11, 48

*Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*,
    912 F.2d 1238 (10th Cir. 1990) ........................................................................12

*Babb v. Wilkie*,
    589 U.S. 399 (2020) ................................................................. 9, 26, 27, 29

*Barger v. Astrue*,
    395 F. App'x 512 (10th Cir. 2010) ..................................................................14

*Baum v. Gillman*,
    648 F.2d 1292 (10th Cir. 1981) ........................................................................12

*Bekkem v. Wilkie*,
    915 F.3d 1258 (10th Cir. 2019) ........................................................................40

*Branson v. Price River Coal Co.*,
    853 F.2d 768 (10th Cir. 1988) ..........................................................................12

*Bronson v. Swensen*,
    500 F.3d 1099 (10th Cir. 2007) ........................................................................17

*Burlington N. & Santa Fe R. Co. v. White*,
    548 U.S. 53 (2006) ............................................................................................41

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..........................................................................................11

*Curtis v. Chester*,
    626 F.3d 540 (10th Cir. 2010) ..........................................................................48

*Dick v. Phone Directories Co., Inc.*,
    397 F.3d 1256 (10th Cir. 2005) ........................................................................25

*Eisenhour v. Weber Cty.*,
744 F.3d 1220 (10th Cir. 2014)................................................................. 18, 19

*Enos-Martinez v. Bd. of Cty. Comm'rs of Cty. of Mesa*,
No. 10-CV-00033-WJM-DLW, 2012 WL 1144660 (D. Colo. Apr. 5, 2012)
.................................................................................................. 14, 15, 16

*Est. of Beauford v. Mesa Cty.*,
35 F.4th 1248 (10th Cir. 2022)...........................................................11

*Est. of Hurtado v. Smith*,
119 F.4th 1233 (10th Cir. 2024)........................................................12

*Ford v. Jackson Nat'l Life Ins. Co.*,
45 F.4th 1202 (10th Cir. 2022)........................................................ 25, 35, 40

*Gómez-Pérez v. Potter*,
553 U.S. 474 (2008) .........................................................................26

*Goodson v. DeJoy*,
No. 22-1338, 2023 WL 4782947 (10th Cir. July 27, 2023)............................35

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) .........................................................................27

*Hickey v. Brennan*,
969 F.3d 1113 (10th Cir. 2020)........................................................18

*Hinds v. Sprint/United Mgmt. Co.*,
523 F.3d 1187 (10th Cir. 2008)........................................................44

*Holmes v. Colo. Coal. for the Homeless Long Term Disability Plan*,
762 F.3d 1195 (10th Cir. 2014)........................................................11

*Johnson v. Weld Cty., Colo.*,
594 F.3d 1202 (10th Cir. 2010)........................................................41

*Jones v. Denver Post Corp.*,
203 F.3d 748 (10th Cir. 2000).................................................... 36, 40

iv

*Key Energy Res., Inc. v. Merrill (In re Key Energy Res., Inc.)*,
 230 F.3d 1197 (10th Cir. 2000)........................................................................14

*Lankford v. City of Hobart*,
 27 F.3d 477 (10th Cir. 1994)...........................................................................23

*Lincoln v. Maketa*,
 880 F.3d 533 (10th Cir. 2018)........................................................................41

*Lindsay v. Denver Pub. Sch.*,
 88 F.4th 1323 (10th Cir. 2023)..................................................... 44, 45, 46, 47

*Luke v. Hosp. Shared Servs., Inc.*,
 513 F. App'x 763 (10th Cir. 2013) .................................................................45

*Martinez v. Potter*,
 347 F.3d 1208 (10th Cir. 2003)......................................................................19

*McCants v. Correct Care Sols., LLC*,
 No. 16-2787-DDC, 2018 WL 2445157 (D. Kan. May 31, 2018)...................43

*Montoya v. Garcia (In re Garcia)*,
 347 F. App'x 381 (10th Cir. 2009) .................................................................14

*Morales-Fernandez v. INS*,
 418 F.3d 1116 (10th Cir. 2005)......................................................................13

*Muldrow v. City of St. Louis, Missouri*,
 601 U.S. 346 (2024) ....................................................... 10, 26, 28, 29, 41, 42

*Murrell v. Shalala*,
 43 F.3d 1388 (10th Cir.1994).........................................................................17

*Mylett v. City of Corpus Christi*,
 97 F. App'x 473 (5th Cir. 2004) .....................................................................34

*Nat'l R.R. Passenger Corp. v. Morgan*,
 536 U.S. 101 (2002) .......................................................................... 18, 19, 20

*Neely v. Ortiz*,
    241 F. App'x 474 (10th Cir. 2007) ...................................................14

*Nelson v. DeJoy*,
    No. 23-1227, 2024 WL 3507723 (10th Cir. July 23, 2024)...........................26

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) .......................................................................41

*Payan v. United Parcel Serv.*,
    905 F.3d 1162 (10th Cir. 2018)........................................................16

*Petersen v. Utah Dep't of Corr.*,
    301 F.3d 1182 (10th Cir. 2002).......................................................33

*Pigeon v. City of Okla. City*,
    No. 22-6033, 2022 WL 17660539 (10th Cir. Dec. 14, 2022).........................12

*Plotke v. White*,
    405 F.3d 1092 (10th Cir. 2005).......................................................35

*Rasko v. New York City Admin. for Children's Servs.*,
    734 F. App'x 52 (2nd Cir. 2018).....................................................34

*Rios v. Centerra Grp. LLC*,
    106 F.4th 101 (1st Cir. 2024) ........................................................34

*Salemi v. Colo. Pub. Emps.' Ret. Ass'n*,
    747 F. App'x 675 (10th Cir. 2018) ..................................................16

*Sanderson v. Wyo. Highway Patrol*,
    976 F.3d 1164 (10th Cir. 2020).......................................................22

*Santana v. City & Cty. of Denver*,
    488 F.3d 860 (10th Cir. 2007).......................................................30

*Sauers v. Salt Lake Cty.*,
    1 F.3d 1122 (10th Cir. 1993).........................................................23

*Scaife v. U.S. Dept. of Veterans Affairs*,
  49 F.4th 1109 (7th Cir. 2022)..........................................................43

*Sec. & Exch. Comm'n v. GenAudio Inc.*,
  32 F.4th 902 (10th Cir. 2022)..........................................................40

*Semsroth v. City of Wichita*,
  304 F. App'x 707 (10th Cir. 2008) ................................................16

*Shivaee v. Dep't of the Navy*,
  74 M.S.P.R. 383 (1997)..................................................................30

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*,
  989 F.3d 747 (10th Cir. 2021)........................................................13

*Singh v. Cordle*,
  936 F.3d 1022 (10th Cir. 2019)......................................................47

*Smith v. Cheyenne Ret. Invs. L.P.*,
  904 F.3d 1159 (10th Cir. 2018)....................................... 18, 21, 24

*Smith v. SDI Indus., Inc.*,
  260 F. App'x 93 (10th Cir. 2008) ..................................................14

*Somoza v. Univ. of Denver*,
  513 F.3d 1206 (10th Cir. 2008)......................................................42

*Special Counsel v. Hathaway*,
  49 M.S.P.R. 595 (1991)..................................................................30

*Sunderman v. Westar Energy, Inc.*,
  307 F. App'x 224 (10th Cir. 2009) ................................................20

*Tomassi v. Insignia Fin. Grp.*,
  478 F.3d 111 (2nd Cir. 2007)..........................................................39

*United States v. Deiter*,
  890 F.3d 1203 (10th Cir. 2018)......................................................13

*West v. Butler Cty. Bd. of Educ.*,
    2024 WL 2697987 (11th Cir. May 24, 2024) ....................................42

*Wheeler v. BNSF Ry. Co.*,
    418 F. App'x 738 (10th Cir. 2011) ........................................ 36, 40

*Williams v. W.D. Sports, N.M., Inc.*,
    497 F.3d 1079 (10th Cir. 2007)..............................................43

## Statutes

5 U.S.C. § 2302(a)(2)(A) ............................................ 26, 28, 30, 33

5 U.S.C. § 4101(4) ......................................................................31

28 U.S.C. § 1291 ...........................................................................1

42 U.S.C. § 2000e .........................................................................7

42 U.S.C. § 2000e-2(a)(1) ..................................................... 25, 27

42 U.S.C. § 2000e-16(a) ...........................................................9, 24

42 U.S.C. § 2000e-2(a) ...............................................................27

## Rules

10th Cir. R. 32(B) .......................................................................51

Fed. R. App. P. 4(a)(1)(B) ............................................................1

Fed. R. App. P. 28(a)(8)..............................................................17

Fed. R. App. P. 32(a)(5)..............................................................51

Fed. R. App. P. 32(a)(6)..............................................................51

Fed. R. App. P. 32(a)(7)(B)(i)......................................................51

Fed. R. App. P. 32(f)...................................................................51

Fed. R. Civ. P. 12(b) ........................................................11

Fed. R. Civ. P. 16(d) ..........................................................7

Fed. R. Civ. P. 16(e) ..........................................................7

Fed. R. Civ. P. 72 ............................................................16

## **Regulations**

29 C.F.R. § 1614.105(a)(1) ........................................... 9, 18, 20

## PRIOR OR RELATED APPEALS

Defendant-Appellee Douglas Collins is not aware of any prior or related appeals.

## JURISDICTIONAL STATEMENT

This is an appeal from Plaintiff-Appellant DaShaun McCray's Title VII federal-sector employment discrimination claim against Defendant-Appellee Secretary Collins in his capacity as the Secretary of the Department of Veterans Affairs. Secretary Collins moved to dismiss for failure to state a claim upon which relief may be granted. (Supp. App. Vol. I at 28).  The district court granted Secretary Collins's motion in part and denied it in part on January 12, 2023. (Supp. App. Vol. I at 116). Secretary Collins later moved for summary judgment. (Supp. App. Vol. I at 169). The district court granted Secretary Collins's motion for summary judgment on August 27, 2024, and entered judgment on the same day. (Supp. App. Vol. VII at 1731-1795). McCray timely filed her notice of appeal on October 23, 2024. (Supp. App. Vol. VII at 1796); *see also* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291.

**ISSUE PRESENTED**

Did the district court err in granting Secretary Collins's motion for summary judgment because McCray failed to timely exhaust her claims and failed to establish a prima facia case of discrimination and retaliation?

# STATEMENT OF THE CASE[1]

## A. Factual background

1.     The Robert J. Dole VA Medical and Regional Office Center ("Wichita VA") is part of the Veterans Integrated Service Network 15: VA Heartland Network region ("VISN 15") and is the Westernmost VA Medical Center in Kansas. (Supp. App. Vol. I at 138). The Wichita VA facilities include the Medical Center in Wichita, and five community-based outpatient clinics ("CBOC") located in Dodge City, Hays, Hutchinson, Parsons, and Salina. (Supp. App. Vol. I at 138).

DaShaun McCray, an African American woman, began working for the Robert J. Dole VA Medical Center in Wichita, Kansas ("Wichita VA") on December 28, 2015, as a Grade 2, Step 5 Staff Nurse in the Office of Community Care (OCC). (Supp. App. Vol. I at 138). The OCC is responsible for coordinating timely care for veterans through private providers when medical care is not available or offered through a VA facility or if the veteran meets certain eligibility criteria such as not being within a 30-minute drive time of a VA facility for primary and mental health care. (Supp. App. Vol. II at 224).

---

[1] Secretary Collins filed a Supplemental Appendix containing the cited documents because the Appendix filed by McCray has documents with missing pages, unreadable pages, incorrect and/or missing bookmarks, and some of the pages have multiple page numbers.

By June 11, 2017, Ms. Ruth Duda had become the Nurse Manager and McCray's supervisor in the OCC. (Supp. App. Vol. I at 138); (Supp. App. Vol. II at 224). Less than a year later, McCray came up for a promotion. (Supp. App. Vol. II at 225). The Nurse Professional Standards Board, however, chose not to promote McCray to Staff Nurse Grade 3 because she did not meet the educational or performance requirements. (Supp. App. Vol. I at 174); (Supp. App. Vol. II at 224).

Following the board's decision not to promote McCray, Duda signed and submitted an appeal on McCray's behalf requesting that the board reconsider its decision not to promote McCray to Staff Nurse 3. (Supp. App. Vol. I at 174). Duda also went to and personally spoke with the Nurse Executive, Norman Forbes, to advocate on McCray's behalf. (Supp. App. Vol. I at 174). Duda had no obligation to submit an appeal on McCray's behalf or to approach Mr. Forbes but did so because she felt that McCray was a valuable asset to the office. (Supp. App. Vol. I at 174). As a result of that appeal, McCray was promoted to Nurse 3. Duda was eventually promoted to chief of the OCC. (Supp. App. Vol. I at 174).

In November or December of 2018, McCray applied for a promotion to OCC Nurse Manager. Duda personally selected McCray for the promotion to Nurse Manager, which was a supervisory position. McCray assumed the Nurse Manager role on or about February 2019. (Supp. App. Vol. I at 138, 174). As McCray transitioned into her new role, the Department of Veterans Affairs also began its

4

implementation of the MISSION Act. McCray testified that this had a "big impact" on the Wichita VA OCC workload because a large portion of its veteran population is eligible to receive care from private providers and the OCC took over responsibility for scheduling, identifying veteran preferences, and tracking consults for those veterans. (Supp. App. Vol. I at 175). This led to a roughly 50% increase in number of consults processed by the OCC. (Supp. App. Vol. I at 175). In the midst of these changes, McCray's and Duda's relationship apparently began to sour.

On January 24, 2020, McCray met with Duda's immediate supervisor, Chief of Staff Dr. Robert Cummings, to discuss Duda. (Supp. App. Vol. I at 177). During this meeting, McCray expressed that she wanted Duda to "get out of the weeds" and to stop micromanaging. (Supp. App. Vol. I at 177). McCray wanted Duda to step back and let McCray do the work, including allowing her to establish a process for working through the OCC backlog. (Supp. App. Vol. I at 177). Dr. Cummings did not inform Duda that he had met with McCray, but, as McCray requested, he did coach Duda on taking a step back and getting out of the weeds. (Supp. App. Vol. I at 177). McCray was not present during the meeting between Dr. Cummings and Duda and does not know what was said. (Supp. App. Vol. I at 177). She assumes that Duda knew about her meeting with Dr. Cummings because Duda later used the term "get out of the weeds." (Supp. App. Vol. I at 177).

McCray made her first contact with an EEO Counselor for informal counseling on January 31, 2020, and filed her formal complaint of employment discrimination on March 30, 2020. (Supp. App. Vol. I at 138-39, 176). As part of McCray's discrimination and retaliation claims, McCray claimed that:

(1) Duda used intimidation when speaking at workstation and stood over McCray to discuss another staff personnel issue;
(2) Duda usurped McCray's authority with staff by countermanding her instructions and pitting staff against her;
(3) Duda increased McCray's workload after McCray had a meeting with the Chief of Staff to discuss Duda's behavior on January 24, 2020;
(4) Duda refused to allow McCray to speak during a meeting on January 30, 2020;
(5) Duda intimidated McCray by violating her personal space and yelling at her;
(6) Duda failed to provide McCray Nurse Manager training and instructed McCray to complete the staffing model duty without formal training;
(7) Duda undermined McCray's ability as a supervisor; and
(8) Duda threatened to remove McCray from federal service.

(Supp. App. Vol. V at 1046-47). McCray alleged that Duda retaliated against her for the January 24, 2020 meeting McCray had with Duda's supervisor, Dr. Cummings. (Supp. App. Vol. I at 177); (Supp. App. Vol. II at 416).[2]

---

[2] A chart containing all the summary judgment facts and responses to those facts is located in the record at Supp. App. Vol. VII at 1693-1729.

## B. Procedural History

McCray filed a Complaint in federal district court alleging claims for race discrimination, "racially hostile work environment," retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Supp. App. Vol. I at 18-27). Secretary Collins filed a motion to dismiss for failure to state a claim. (Supp. App. Vol. I at 28). The district court granted the Collins's motion in part. (Supp. App. Vol. I at 116). First, the district court ruled that McCray had failed to exhaust her discrete claims that she suffered a constructive discharge and had to work overtime without compensation. (Supp. App. Vol. I at 120-27). Second, the district court ruled that McCray did not allege sufficient facts to support a claim that the alleged hostile work environment was based upon her race. (Supp. App. Vol. I at 130-35). McCray's other race discrimination and retaliation claims survived Secretary Collins's motion to dismiss.

This matter proceeded though discovery and at the close of discovery, the parties submitted a proposed final pretrial order to the magistrate judge pursuant to Fed. R. Civ. P. 16(d) & (e) and D. Kan. Rule 16.2(a). In this proposed pretrial order, McCray attempted to assert a claim for "retaliatory harassment" for the first time. Secretary Collins objected. Magistrate Judge Mitchell conducted an in-person final pretrial conference where the court heard argument on Secretary Collins's objections, among other things. Magistrate Judge Mitchell sustained Secretary

Collins's objection to including a new claim for retaliatory harassment in the final pretrial order, ruling that McCray had not asserted any such claim in her Complaint. (Supp. App. Vol. I. at 141-42, n. 2). McCray did not seek review of the magistrate judge's ruling.

Secretary Collins moved for summary judgment on all of McCray's remaining claims after entry of the final pretrial order. (Supp. App. Vol. I at 171). The district court granted Secretary Collins's motion for summary judgment and entered judgment on the same day. (Supp. App. Vol. VII at 1731). This appeal followed.

## SUMMARY OF ARGUMENT

Sometimes employees have difficult relationships in the workplace. But Title VII is not a code a civility, and it does not impose liability for disharmony. Instead, the federal sector provision of Title VII requires that "all personnel actions employees or applicant for employment. . . be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The district court correctly determined that McCray—a federal employee—failed to establish a *prima facie* case of Title VII discrimination or retaliation.

First, McCray did not timely or properly exhaust several of her claims within the 45-day window required under 29 C.F.R. § 1614.105(a)(1). McCray recognizes this, but she argues on appeal that some of her claims were "reasonably related" to those that she did exhaust. This argument fails. McCray's claims that occurred prior to the 45-day window are barred even if they are "reasonably related." And McCray's claims that persons other than Ruth Duda discriminated or retaliated against her are not "reasonably related" to the facts and allegations in her EEO Charge. Indeed, McCray's only alleges in her EEO Charge that Duda took actions that were discriminatory or retaliatory.

Second, McCray's discrimination claim fails because the events about which she complains are not "personnel actions" as that term has been defined by the Supreme Court in *Babb v. Wilkie*, 589 U.S. 399, 405 (2020). And even if they were,

the facts—as opposed to conclusory allegations of racial animus—do not give rise to an inference of discrimination.

Third, McCray's retaliation claim fails because the events about which she complains are not "materially adverse employment actions." On appeal, McCray appears to argue that the Supreme Court decision in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 346 (2024) changed this standard. That is incorrect. The Supreme Court continues to require "significant harm" for a materially adverse action remains for reasons "peculiar to the retaliation context." *Muldrow*, 601 U.S. at 357. McCray's retaliation claim also fails because she offered no evidence to the district court that the alleged retaliator had any knowledge of her protected activity.

Accordingly, this Court should affirm the district court's dismissal of McCray's claims.

## ARGUMENT AND AUTHORITIES

## I.    Standard of Review.[3]

This Court reviews the grant of summary judgment de novo applying the same standards as the district court. *Est. of Beauford v. Mesa Cty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). De novo review does not mean that a party may advance new arguments or theories for the first time on appeal, but only that the appellate court owes no deference to the decision of the district court. *See Anschutz Land & Livestock Co. v. Union Pac. R. Co.*, 820 F.2d 338, 344 n. 5 (10th Cir. 1987). "Propounding new arguments on appeal in attempting to prompt [the appellate court] to reverse the trial court—arguments never considered by the trial court—is not only somewhat devious, [but it also] undermines important judicial values." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for

---

[3] McCray's opening brief includes a standard for reviewing a district court's decision to dismiss a claim under Fed. R. Civ. P. 12(b). (Appellant's brief, pg. 37). But McCray never develops any argument that the district court erred when it dismissed McCray's constructive discharge and overtime claims for failure to exhaust and her hostile work environment claim for failure to state a claim. Given her failure to develop those arguments, McCray has waived appellate review of the district court's dismissal order. *Holmes v. Colo. Coal. for the Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014) (citing cases supporting the proposition that failure to adequately brief an argument waives appellate review).

trial as to those dispositive matters for which the nonmoving party carries the burden of proof. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The nonmoving party cannot carry his or her burden by resting on the allegations contained in the Complaint. *Baum v. Gillman*, 648 F.2d 1292, 1297 (10th Cir. 1981). Instead, a party must produce "specific facts showing that there remains a genuine issue for trial." *Pigeon v. City of Okla. City*, No. 22-6033, 2022 WL 17660539, at *5 (10th Cir. Dec. 14, 2022) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988)). Thus, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Est. of Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (citation omitted).

## II. The district court correctly held that McCray cannot rely on a continuing violation theory because she did not claim retaliatory harassment.

McCray argues that the district court erred by failing to consider her claim for retaliatory harassment because, according to McCray, she alleged retaliatory harassment in her EEO Charge and "pleaded retaliatory harassment" in her Complaint. (Appellant's brief, pgs. 44-46). But McCray waived appellate review on this issue under the firm waiver rule. And because of this, the district court did not err in concluding that McCray cannot rely upon a continuing violation theory in this matter.

### A. McCray waived appellate review of Magistrate Judge Mitchell's finding that McCray did not assert a retaliatory harassment claim in her Complaint.

As McCray admits, the magistrate judge ruled in this case that McCray did not allege a claim for retaliatory harassment in her Complaint. (Appellant's brief, pg. 46); (Supp. App. Vol. I at 141-42, n. 2). In the magistrate judge's view, McCray was seeking to belatedly assert the claim in an effort to circumvent the district court's order previously dismissing her constructive discharge claim. (Supp. App. Vol. I at 141-42, n. 2). Thus, the magistrate judge did not allow McCray to insert the new claim into the pretrial order. As the district court later noted, "[McCray] didn't ask [the district court] to review Judge Mitchell's ruling." (Supp. App. Vol. VII at 1737). Because of this failure, McCray has waived appellate review of the magistrate judge's decision.

Under the firm waiver rule, "a party who fails to make a timely objection to the magistrate judge's [ruling] waives appellate review of both factual and legal questions." *United States v. Deiter*, 890 F.3d 1203, 1211 n.5 (10th Cir. 2018) (quoting *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005)). This rule applies not only to a magistrate judge's Report and Recommendation on dispositive issues, but also to the magistrate judge's nondispositive rulings, such as the ruling by the magistrate judge in this case. *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (finding firm waiver rule applicable when a party fails to object to a magistrate judge's nondispositive ruling under Rule 72(a)).

The firm waiver rule may be suspended in counseled, nonhabeas cases if the interests of justice favor review, "but this exception is especially narrow." *Barger v. Astrue*, 395 F. App'x 512, 513 (10th Cir. 2010) (citing *Key Energy Res., Inc. v. Merrill (In re Key Energy Res., Inc.)*, 230 F.3d 1197, 1200 (10th Cir. 2000)). In deciding whether the interests of justice favor review, the Court should not consider the merits underlying the case. Instead, the Court must limit its focus to "the facts [if any] that purport to excuse the lack or untimeliness of the filing of objections by counsel." *Barger*, 395 F. App'x at 513 (citation omitted). A failure to seek review or to object because of counsel's omission, neglect, or ignorance of the law is not sufficient to invoke the interests of justice exception. *See*, *e.g.*, *Montoya v. Garcia (In re Garcia)*, 347 F. App'x 381, 382–83 (10th Cir. 2009) ("[W]e expect counsel to know the rules, and Rule 72(a) clearly provides that a party who wishes to continue to complain about an error must file objections in the district court."); *Smith v. SDI Indus., Inc.*, 260 F. App'x 93, 94-95 (10th Cir. 2008); *Neely v. Ortiz*, 241 F. App'x 474, 477 & n. 1 (10th Cir. 2007).

In this case, the interests of justice do not favor review. McCray offers no excuse for her failure to seek review of Magistrate Judge Mitchell's rulings in the final pretrial order. Instead, McCray appears to argue that the magistrate judge's ruling was "subsumed" into the district court's Order on summary judgment. (Appellant's brief, pgs. 38 & 46 (citing *Enos-Martinez v. Bd. of Cty. Comm'rs of*

*Cty. of Mesa*, No. 10-CV-00033-WJM-DLW, 2012 WL 1144660 (D. Colo. Apr. 5, 2012)). This is so, McCray argues, because Secretary Collins "extensively briefed" retaliatory harassment in his motion for summary judgment. (Appellant's brief, pg. 46). McCray's argument is factually and legally wrong.

First, McCray's argument is factually wrong because Secretary Collins did not brief the issue of retaliatory harassment as part of its motion for summary judgment. *See* (Supp. App. Vol. I at 171). Secretary Collins had no need to do so because the magistrate judge had already ruled that McCray could not belatedly inject the claim into the case. Rather, McCray made references in her response about an existing retaliatory harassment claim, without any mention of the magistrate judge's ruling or any alleged error by the magistrate judge whatsoever. (Supp. App. Vol. II at 418 n. 2, 421-23, 440, 444-45, 446 fn. 3, 449, 455). In reply, Secretary Collins simply noted that McCray had wholly failed to even acknowledge the magistrate judge's ruling. (Supp. App. Vol. VII at 1669-70).

Second, McCray's argument is legally wrong because *Enos-Martinez* is plainly inapposite. In *Enos-Martinez*, a defendant filed a combined motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment. *Id*. at *2. The District of Colorado court granted the defendant's motion for summary judgment and reached the unremarkable conclusion that the motion to dismiss portion of the filing was rendered moot. *Id*. at *8.

Unlike *Enos-Martinez*, Secretary Collins did not file any such combined motion. *Enos-Martinez* also does not implicate this Court's firm waiver rule because it does not involve any ruling by a magistrate judge under Fed. R. Civ. P. 72. And, to the extent that McCray would attempt to make this stretch, there was no pending objection or issue before Magistrate Judge Mitchell when Secretary Collins filed his motion for summary judgment. Therefore, there was nothing to be "subsumed" by the district court.

Thus, McCray waived appellate review of Magistrate Judge Mitchell's ruling that McCray did not assert a claim for retaliatory harassment in this case.

## B. The district court correctly concluded that McCray cannot rely upon a continuing violation theory to support her remaining discrimination and retaliation claims.

This Court has repeatedly confirmed that "the continuing violations doctrine is viable *only* for hostile work environment claims." *Semsroth v. City of Wichita*, 304 F. App'x 707, 715 (10th Cir. 2008); *see also*, *e.g.*, *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) (holding that "a claim for disparate treatment is based on a discrete act" and thus the continuing violation doctrine cannot apply to a disparate treatment claim); *Salemi v. Colo. Pub. Emps.' Ret. Ass'n*, 747 F. App'x 675, 689 (10th Cir. 2018) ("our post-*Morgan* case law makes clear that the continuing violation theory is not available in the context of a Title VII claim based on discrete incidents of discrimination or retaliation. . . ."). McCray does not dispute

16

that Tenth Circuit precedent "categorically" precludes McCray from relying upon a continuing violation theory to support her discrimination and retaliation claims. (Appellant's brief, pg. 48).

Here, the only claims before the district court on summary judgment were McCray's discrimination and retaliation claims because, as discussed above, McCray chose not to seek review of the magistrate judge's decision and the district court had already dismissed McCray's hostile work environment claim. (App. Vol. I at 88). McCray does not challenge the dismissal of her hostile work environment claim other than proclaiming that her "hostile work environment claims [sic] should not have been dismissed." (Appellant's brief, pg. 46). This perfunctory statement is insufficient to invoke appellate review and, thus, McCray has waived that issue. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir.1994) (stating that "a few scattered" and "perfunctory" statements that failed to frame and develop an issue were insufficient to invoke appellate review); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (Under Fed. R. App. P. 28(a)(8) "[a]n appellant's opening brief must identify 'appellant's contentions and the *reasons for them*, with citations to the authorities and parts of the record on which the appellant relies.'") (emphasis added).

Thus, the district court did not err in concluding that McCray cannot rely upon a continuing violation theory to support her claims for discrimination and retaliation.

## III. The district court correctly granted summary judgment on the claims brought by McCray that were not timely or properly exhausted.

"Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). In pertinent part, an aggrieved federal employee must bring any claim of discrimination to an EEO counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). A "plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).

Discrete discriminatory or retaliatory acts occurring outside of this 45-day window are not actionable even when such acts "are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). And where alleged acts of discrimination or retaliation post-date the EEO Charge, those discrete acts "must be separately exhausted, even when acts that post-date the EEOC complaint reasonably relate to others presented to the EEOC." *Eisenhour v.*

*Weber Cty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). So, a plaintiff is required to either amend her EEO Charge or file a new one to assert the alleged post-charge events.

In this case, the district court granted Secretary Collins summary judgment on the following claims made by McCray because they were not timely or properly exhausted: (1) claims against Dr. Cummings, which were not reasonably related to the allegations contained in the EEO Charge (Supp. App. Vol. VII at 1738-42); (2) claims that arose prior to the 45-day window (Supp. App. Vol. VII at 1743-46); and (3) claims that arose after the EEO Charge but were not separately exhausted (*Id.*).[4] The district court's decision was correct and should be affirmed.

## A. The district court correctly granted summary judgment on McCray's discrimination and retaliation claims that were not exhausted within 45 days of the alleged event.

Under Supreme Court and Tenth Circuit precedent, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 102; *see also Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("Unexhausted claims involving discrete employment actions are no longer viable."). Although these claims are no longer

---

[4] The only alleged act of discrimination or retaliation falling within the third category is McCray's claim that she received a "lowered performance evaluation." *See* (Supp. App. Vol. VII at 1744). McCray never presents any argument on appeal that the district court erred in granting summary judgment on this post-EEO Charge claim of discrimination and/or retaliation, nor could she. *See, e.g., Eisenhour*, 744 F.3d at 1227 (each discrete act "must be separately exhausted, even when acts that post-date the EEOC complaint reasonably relate to others presented to the EEOC").

actionable, they may still serve as "background evidence." *Sunderman v. Westar Energy, Inc.,* 307 F. App'x 224, 229 (10th Cir. 2009).

The district court here followed a straightforward exhaustion framework in properly granting summary judgment on McCray's untimely claims. First, the district court noted the parties' stipulated fact that McCray first contacted an EEO counselor on January 31, 2020. (Supp. App. Vol. VII at 1743). Next, the district court noted that any event occurring 45 days prior to the initial EEO contact— December 17, 2019—would be statutorily time-barred under 29 C.F.R. § 1614.105(a)(1). (*Id.*). The district court specifically recognized that any event that was time-barred could still serve as background evidence. (Supp. App. Vol. VII at 1843-44). Based on this straightforward framework and the parties' stipulations of fact, the district court found that the following claims were time-barred: (1) that McCray's supervisor yelled at her on April 5, 2018; (2) that her supervisor countermanded her instructions in January 2019; and (3) that the training she received from her supervisor prior December 17, 2019, was inadequate. (Supp. App. Vol. VII at 1744).

McCray criticizes this outcome, asserting that "[t]hese claims were actually investigated by the EEO." (Appellant's brief, pg. 50). Ostensibly, this is an effort to assert that the untimely claims are reasonably related to the claims that were timely

made. But McCray's argument lacks any merit in light of Supreme Court precedent in *Morgan*.

Thus, because McCray's claims occurring prior to December 17, 2019, are not actionable, it was appropriate for the district court to grant summary judgment in Secretary Collins's favor. The district court's decision to dismiss these untimely exhausted claims should be affirmed.

**B.** **McCray's discrimination and retaliation claims against Dr. Cummings are not reasonably related to the allegations contained in her EEO Charge.**

McCray argues that the district court erred because it "unfairly and erroneously narrowed" her claims of discrimination "with its interpretation of exhaustion of remedies." (Appellant's brief, pg. 49). According to McCray, the district court "ruled that [McCray] may only assert the specific events set forth in her charge of discrimination." (*Id.*). And because of this, the district court "ruled that [McCray] exhausted no claims against Dr. Cummings." (Appellant's brief, pg. 50). This argument misinterprets the district court's decision.

The district court recognized that McCray's "claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." (Supp. App. Vol. VII at 1739 (citing *Smith v.*, 904 F.3d at 1164)). The district court further recognized that "'the Charge itself'—and not 'the Charge and any responsive

documents'—defines the scope of the investigation, 'so the employer knows exactly what allegations to defend itself against.'" (*Id.*). Thus, under Tenth Circuit law, "to determine the claim before the [EEO], one looks *only* to the Charge itself." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1171 (10th Cir. 2020) (emphasis in original).

Here, the district court was correct in concluding that McCray failed to exhaust any claim that Dr. Cummings acted in a discriminatory or retaliatory manner. No matter how liberally McCray's EEO Charge is construed, it does not include any theory that Dr. Cummings took any action to discriminate or retaliate against McCray. (Supp. App. Vol. IV at 1027-28). Instead, each and every allegation of discrimination or retaliation concerns Ms. Duda's alleged actions. (*Id.*). Dr. Cummings's name never appears in McCray's own formal EEO complaint or in the list of eight claims formally accepted by the EEO. (Supp App. Vol. V at 1046-47); (Supp. App. Vol. I at 139-40). As the district court recognized, McCray's "EEO complaint only refers to Dr. Cummings by his title—Chief of Staff—and even then, it references him merely as the person with whom plaintiff discussed *Duda's* behavior." (Supp. App. Vol. VII at 1740). Thus, the reasonable and likely scope of McCray's EEO Charge cannot include a claim that Dr. Cummings acted in a discriminatory and retaliatory manner during some unidentified event.

McCray makes no effort to convince this Court that her EEO Charge contains facts concerning Dr. Cummings's supposed discriminatory and retaliatory actions. Instead, McCray advances two separate arguments for why she need not have included any allegations regarding Dr. Cummings in her EEO Charge.

First, McCray argues that she exhausted her claims because her complaint is "against the agency for all discriminatory acts that took place against any individual." (Appellant's brief, pg. 50). McCray cites this Court's decisions in *Sauers v. Salt Lake Cty.*, 1 F.3d 1122 (10th Cir. 1993), and *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994), in support. But these cases are inapposite. McCray's citations to *Sauer* and *Lankford* merely establish the unremarkable conclusion that the appropriate defendant in a Title VII lawsuit is the employer. Those cases do not speak to administrative EEO complaints, which do not require the naming of a defendant at all. Indeed, McCray's own claim form instructed her to "state the specific claim, personnel action and/or event that caused you to file this complaint." (Supp. App. Vol. V at 1046-47).[5] McCray did so, even using an extra page to explain the events, and in each and every claim she only identified Ms. Duda as the person who discriminated or retaliated against her. (*Id*.).

---

[5] Some of the form text in the Complaint of Employment Discrimination submitted by McCray during the administrative is difficult to read. A legible version is in the record at Supp. App. Vol. V at 1068.

Second, McCray argues that she exhausted her claims because "[t]he events were fully investigated . . . ." (Appellant's brief, pg. 51). The Tenth Circuit has "consistently held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the *Charge* itself, rather than in the Charge and any responsive documents." *Smith*, 904 F.3d at 1165. (emphasis in original). Thus, what matters is the "Charge itself," not the Charge and any resulting investigation. There is no dispute that McCray's EEO Charge contains no allegation that Dr. Cummings acted in a discriminatory or retaliatory manner or allegedly removed her from a "Referral Coordination Team."

Thus, this Court should affirm the district court's finding that McCray failed to administratively exhaust any claims against Dr. Cummings.

## IV. The district court correctly granted summary judgment on McCray's employment discrimination claim because McCray did not suffer a personnel action or establish an inference of discrimination.

Under 42 U.S.C. § 2000e-16(a), "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." To establish a prima facie case for race discrimination, a plaintiff must present "evidence that: (1) the victim belongs to a protected class; (2) the victim suffered an adverse [personnel] action; and (3) the challenged action took place under circumstances giving rise to an inference of

discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (internal quotation marks and citation omitted).

The district court granted summary judgment in Secretary Collins's favor because, among other things, McCray failed show that she suffered an adverse personnel action or to establish an inference of discrimination. The district court's decision should be affirmed. The events at issue in this appeal are not personnel actions and, even if they were, the uncontroverted facts do not support an inference of discrimination. The district court's decision should be affirmed.

## A.   Federal sector Title VII employment discrimination claims under Section 2000e-16(a) are limited to personnel actions.

For many years, courts have interpreted the federal sector provisions to be synonymous with its private sector counterpart, which prohibits discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment." *See* 42 U.S.C. § 2000e-2(a)(1). Thus, whether a person was a private or federal sector employee, this Court only allowed relief for alleged discrimination under Title VII for those "adverse employment actions" that cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005). In recent years, however, the federal sector and private sector provisions have diverged.

On one hand, the Supreme Court in *Babb* recently explained that the ADEA's federal sector provision (like Title VII) only authorizes liability for "personnel actions." 589 U.S. at 405 (quoting 29 U.S.C. § 633a(a)).[6]  The Supreme Court stated that although "the ADEA does not define this term, its meaning is easy to understand," and pointed to a statutory provision of the Civil Service Reform Act (CSRA) providing a list of employment decisions that constitute a "personnel action." *Id*. (citing 5 U.S.C. § 2302(a)(2)(A)). Such "personnel actions" include (1) appointments (i.e., hiring decisions); (2) suspensions, removals, "or other disciplinary or corrective actions"; (3) a "decision concerning pay, benefits, or awards"; (4) decisions regarding training "if the training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in [subsection 2302(a)(2)(A)]"; and (5) "any other *significant* change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A) (emphasis added).

On the other hand, the Supreme Court in *Muldrow v. City of St. Louis* recently rejected a reading of Title VII's private sector provisions that would require an

---

[6] The holding in *Babb* applies with equal force to claims under the federal sector Title VII provision, after which the ADEA was modeled. *See Gómez-Pérez v. Potter*, 553 U.S. 474, 487 (2008) ("[t]he ADEA federal-sector provision was patterned 'directly after' Title VII's federal-sector discrimination ban"); *see also Nelson v. DeJoy*, No. 23-1227, 2024 WL 3507723, at *3 (10th Cir. July 23, 2024) (applying *Babb* to claim brought under Title VII).

employee to demonstrate that an alleged transfer resulted in "significant" harm to be actionable, 42 U.S.C. § 2000e-2(a)(1). 601 U.S. 346, 354-57. The Court reasoned that while an employee "must show some harm respecting an identifiable term or condition of employment," the employee need not show that harm caused "significant disadvantages[.]" *Id.* at 355. Section 2000e-2(a) is not at issue here because it is inapplicable to federal agencies.

In *Babb*, the Supreme Court emphasized that equating the scope of the private and federal sector provisions is misplaced because they use different words. The Court noted that "Congress could have easily" used the same language in both provisions "but Congress did not choose this route. Instead, it deliberately prescribed a distinct statutory scheme applicable only to the federal sector, and in doing so, it eschewed the language used in the private-sector provision." *Id.* at 412 (cleaned up); *cf. Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When conducting statutory interpretation, we must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.") (citation and quotation omitted). Thus, for an event to be actionable under the federal sector provisions of Title VII, the identified event must be an enumerated "personnel action" under the CSRA or fall into that term's catch-all—"any other significant

change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii)).[7]

The Supreme Court has not decided whether *Muldrow* has any impact on claims brought under the federal sector provision of Title VII. For example, whether a federal sector employee proceeding under the catch-all provision must show that he or she suffered a "significant change in duties, responsibilities, or working conditions" that caused "some harm." But this Court need not answer that question because, as demonstrated below, the events about which McCray complains are not personnel actions. And even if they were, they did not occur under circumstances giving rise to an inference of discrimination.

**B.    The district court's decision to grant summary judgment should be affirmed because the exhausted allegations of discrimination are not "personnel actions."**

Having addressed McCray's failure to exhaust certain claims, the district court reflected that the following six discrimination claims remained:

> (1) that Duda provided inadequate training; (2) that Duda increased McCray's workload on January 24, 2020; (3) that Duda refused to allow McCray to speak during a meeting on January 30, 2020; (4) that Duda yelled at McCray and invaded her space on January 31, 2020; (5) that Duda undermined McCray by accusing her of

---

[7] Secretary Collins made this same argument in seeking to dismiss McCray's claims. (Supp. App. Vol. I at 39). But the district court declined to adopt this standard because this Court had not yet "applied the list of 'adverse personnel actions' in Title VII cases." (Supp. App. Vol. I at 128, n.8.).

taking over a meeting in February 2020; and (6) that Duda
threatened to remove McCray from federal service.

(Supp. App. Vol. VII at 1745-46). The district court then thoroughly addressed each

separate discrimination claim, ultimately concluding that they did not amount to an

adverse employment action even under *Muldrow*'s more lenient standard. (Supp.

App. Vol. VII at 1747-76). That is true, and the district court's decision should be

affirmed on that basis. Indeed, McCray fails to allege or even argue in her brief that

the district court's analysis under *Muldrow* was erroneous. McCray has, therefore,

waived any argument that the district court's application of the *Muldrow* standard

was incorrect.

But recall that, in the wake of *Babb*, McCray must establish that the events at

issue fall within an enumerated "personnel action" under the CSRA or into the catch-

all "significant change" provision to survive a motion for summary judgment. The

only alleged event in this case that might conceivably fall within one of the listed

"personnel actions" is McCray's claim that she received inadequate training.[8] But

the record dispels that possibility. And it also establishes that the exhausted claims

---

[8] McCray does refer to having received a written reprimand. (Appellant's brief, pg. 53). This appears to have been copied and pasted from another case as McCray did not make a claim that she received a written reprimand at the district court level. And McCray testified during her deposition that she received "no disciplinary action." (Supp. App. Vol. I at 189).

do not represent a "significant change in duties, responsibilities, or working conditions."

### 1. McCray's claim that Duda's on-the-job training was inadequate is not an agency decision regarding training that is reasonably expected to lead to a personnel action.

Not all agency decisions regarding education and training are to be considered personnel actions—an agency decision denying training may only be considered a personnel action if the training might reasonably have been expected to have led to an appointment, promotion, performance evaluation, or other covered action. *See* 5 U.S.C. § 2302(a)(2)(A)(ix); *Shivaee v. Dep't of the Navy*, 74 M.S.P.R. 383, 387 (1997). There must be, at a minimum, a moderate probability that the training would have resulted in some type of personnel action. *See Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 607 (1991), *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992).

Courts have not yet endeavored to interpret the reach of this provision. But Secretary Collins submits that the necessary "decision" under this statute is more substantial than everyday decisions regarding the specific content, length, format, and frequency of on-the-job training. This is consistent with this Court's long-held position that it does not act as a "super-personnel department that second guesses employers' business judgments." *See Santana v. City & Cty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) ("[I]t is not our role to act as a super personnel department

that second guesses employers' business judgments."). And it is also consistent with

Congress's definition of "training" under the Government Employee's Training Act:

> "training" means the process of providing for and making available to an employee, and placing or enrolling the employee in, a planned, prepared, and coordinated program, course, curriculum, subject, system, or routine of instruction or education, in scientific, professional, technical, mechanical, trade, clerical, fiscal, administrative, or other fields which will improve individual and organizational performance and assist in achieving the agency's mission and performance goals.

5 U.S.C. § 4101(4).

Here, what McCray complains about is not actually a *denial* of training.[9] It is

her personal disagreement about the adequacy of the content, length, format, and

frequency of the on-the-job training that she received. McCray believes that she was

inadequately trained on the "staffing model" task because Duda had her observe

while completing the task and indicated "that's how you do it."  (Supp. App. Vol. I

at 181); (Supp. App. Vol. II at 416).[10] Duda confirmed that she did walk McCray

through the process of completing the staffing model, including how to obtain the

---

[9] McCray initially claimed that she was not provided Nurse Manager training. But she later admitted that she had received Nurse Manager training and that Duda is the person who sent her to the trainings.  (Supp. App. Vol. I at 181); (Supp. App. Vol. II at 416)

[10] The "staffing model" is a fillable form that automatically calculates whether the OCC unit is over or understaffed based upon the inputs provided. (Supp. App. Vol. I at 181); (Supp. App. Vol. II at 416).

relevant data from the web-based tracking database. (Supp. App. Vol. I at 181). Duda considered this to be sufficient on-the-job training for the task. (Supp. App. Vol. I at 181). Indeed, when Duda became Nurse Manager she did not receive any specific training on how to complete a staffing model. (Supp. App. Vol. II at 227).

Despite having received relevant on-the-job training, McCray apparently contends that Duda's judgment regarding the content and format of this on-the-job training is itself a personnel action. That simply cannot be so without turning our courts into a super-personnel department, carefully analyzing on the spot decisions regarding informal training, its content, its frequency, and its method of delivery and whether it is sufficient for that particular employee to understand. Moreover, the on-the-job training for such a simple task is not an action with moderate probability that the training would have resulted in some type of personnel action.

Thus, McCray's failure to train claim does not qualify as an enumerated "personnel action" under the CSRA and cannot serve as a basis for her discrimination claim. But even if it were, as discussed in Section IV.C., the allegedly inadequate training did not arise under an inference of discrimination or racial animus.

### 2. McCray's claims do not fall within the catch-all "significant change" provision.

Absent a specific enumerated "personnel action," McCray must show that the alleged actions amount to "significant change[s] in duties, responsibilities, or

working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). In its summary judgment ruling, the district court opted to rely upon the Supreme Court's more lenient "some harm" standard in addressing McCray's exhausted discrimination claims. (Supp. App. Vol. VII at 1748-49). Even applying this "some harm" standard, McCray's claims still failed. The result should be the same here on appeal because under the federal sector "significant change" standard McCray's claims certainly fail.

A supervisor's yelling and intimidation may be poor form, but "Title VII does not prohibit all distasteful practices by employers. [A supervisor] could be unconscionably rude and unfair to [an employee] without violating Title VII." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

McCray's allegedly increased workload—having to send an email and perform "little things"—claim fails because it amounts to nothing more than "a mere inconvenience or an alteration of job responsibilities." (Supp. App. Vol. VII at 1759-60). And McCray concedes that she did not have a problem with the allegedly increased workload.

McCray's claim that Duda refused to allow her to speak during a meeting had no adverse effect on the terms and conditions of her employment. To the contrary, as the district court recognized, McCray was allowed to speak and the Medical Center Director praised McCray for her additions to the meeting. (Supp. App. Vol. VII at 1761-63).

McCray's undermining claim also fails because such criticism, counseling, and admonitions are not significant changes to the terms and conditions of employment. *See*, *e.g.*, *Rasko v. New York City Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2nd Cir. 2018) ("Informal discipline, criticism, or counseling does not constitute an adverse act if no change in working conditions accompanies it."); *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112-13 (1st Cir. 2024) ("A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment."); *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (holding that "countermanding [plaintiff's] orders in front of his subordinates and characterizing him as a liar" is not an adverse employment action).

And finally, McCray's claim that she was threatened with removal lacks any factual basis. McCray alleges that Duda threatened to remove her from federal service on March 2, 2020, when Duda stated "I find your response interesting, as I was also told to fire you when you violated the HIPAA law. Yet, I chose a merciful route." (Supp. App. Vol. VII at 1773). As the district court agreed, this "does not reflect that she was threatened with removal." (Supp. App. Vol. VII at 1774). But even if McCray's allegation were not factually insufficient, such an unrealized threat of removal is not an adverse personnel action. And even if that were not the case,

this unrealized threat of removal does not amount to a significant change in the terms and conditions of McCray's employment.

McCray has not shown that she suffered any "personnel action." Thus, the district court's decision granting summary judgment in Secretary Collins's favor should be affirmed.

### C. The district court's decision to grant summary judgment should be affirmed because the uncontroverted facts do not give rise to an inference or finding of discrimination.

An "inference of discrimination" based on race may be shown in various ways, including "actions or remarks made by decision makers that can be viewed as reflecting a discriminatory animus" or "preferential treatment given to [an] employee outside the protected class." *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). But suppositions, generalizations and sweeping statements—supported by no actual objective evidence or specific facts—are not sufficient to overcome summary judgment. *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022). This is so because a plaintiff's "personal belief is insufficient to create an issue of material fact." *Id*. Thus, McCray must have come forward with some objective evidence outside of her own personal opinions to show an inference of discrimination based on race. *See Goodson v. DeJoy*, No. 22-1338, 2023 WL 4782947, at *7 (10th Cir. July 27, 2023) (unpublished) (finding no inference of discrimination where the plaintiff failed to present evidence outside of her own

allegations); *see also Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000) (rejecting discrimination claim because the plaintiff had produced "no objective evidence of disparate treatment in the record"); *Wheeler v. BNSF Ry. Co.*, 418 F. App'x 738, 751 (10th Cir. 2011) (dismissing claim because the plaintiff "failed to provide the district court with *sufficient objective evidence* to support this allegation" because "the only evidence she cited in support of this allegation was her own deposition transcript" (emphasis added)).

On appeal, McCray unleashes a maelstrom of generalizations and assertions of discrimination hoping that this Court might find something to grasp. Many, if not all, of these assertions have no evidentiary support in the record. For example, McCray asserts that Duda "racially harassed Tenesha Burks" and gave only African American employees "unbearable workloads." (Appellant's brief, pgs. 57-58). Other assertions are being made for the first time on appeal. For example, McCray now alleges that she was "required to discipline black employees more harshly than white employees." (Appellant's brief, pg. 58). This Court should not credit these unsupported assertions and new theories.

Regardless, the district court was correct when it concluded that no reasonable jury could conclude that the events in this case occurred under an inference of racial discrimination.

McCray has no objective evidence—rather than vague opinions and summary accusations—that Duda in general gave preferential treatment to Caucasian employees. Indeed, the evidence in the record (including McCray's own testimony) does not support such an inference. As the district court noted, McCray's "deposition excerpts that supposedly support" her conclusory allegations of preferential treatment "simply describe[] Duda's treatment of plaintiff without comparison to any other employees" (Supp. App. Vol. VII at 1772). McCray also testified that Duda "personally targeted" and created a hostile work environment for two *Caucasian* employees. (Supp. App. Vol. VII at 1772). In one situation, it was alleged that Duda demeaned and degraded a Caucasian employee by standing outside her work area and stating that Ms. Lewis was not "smart enough" and should look for another job. (Supp. App. Vol. VII at 1772).

McCray has no objective evidence—rather than vague opinions and summary accusations—that any Caucasian employee under Duda's supervision received some preferable treatment with respect to training in general. More specifically, McCray has not presented any objective evidence that non-African American employees under Duda's supervision were given training that McCray was denied or received better and/or different training on how to complete the staffing model, budget reports, and/or consult tracking data. Indeed, it is uncontroverted that Duda personally sent McCray to "nurse manager training." (Supp. App. Vol. I at 181);

(Supp. App. Vol II at 416). And it is also uncontroverted that Duda herself received less training on the staffing model than McCray received. (Supp. App. Vol. I at 181); (Supp. App. Vol II at 416).

McCray cannot put forward objective evidence—rather than vague opinions and summary accusations—supporting an inference that Duda sought to usurp or diminish McCray's authority due to racial animus. Again, McCray's own testimony just doesn't bear this out. As the district court recognized, McCray testified that Duda was motivated by power—not race—in allegedly undermining her authority. (Supp. App. Vol. VII at 1767). McCray also testified that the alleged undermining was based on retaliation—not race. This, as the district court put it, pulls the rug out from under McCray's assertion of racial animus. (*Id*.). McCray also testified that Duda personally selected McCray for her promotion to Nurse Manager. (Supp. App. Vol. I at 174). In other words, *Duda* is the individual responsible for providing McCray with her supervisory authority. McCray also has not put forward any objective evidence to show Duda's actions toward any non-African American supervisor's authority differed in any aspect.

McCray cannot present any objective evidence—rather than vague opinions and summary accusations—to support an inference that Duda supposedly increased McCray's workload because of racial animosity or discrimination. McCray has not put forward any objective evidence that only African American employees in the

OCC saw an increase in their workloads. McCray has not put forward any objective evidence that Caucasian employees received increased but more favorable workloads. McCray has not put forward any objective evidence that only *her* workload increased. The only thing McCray offers is her conclusory, unsupported allegations.

McCray makes one last attempt to suggest that Duda harbored discriminatory animus. But even that attempt fails. McCray cryptically suggests that Duda "was demoted because of her manner in handling a matter concerning a racial slur." (Appellant's brief, pg. 61). Secretary Collins submits that the obscure nature of McCray's statement is by design because the actual evidence dispels any inference of discrimination. This alleged racial slur was used by Tanesha Burks, an African American employee, to describe another African American employee's headscarf. (Supp. App. Vol. VII at 1653-54). This hardly is probative of Duda's own belief, especially given that Duda did not understand the comment. *See Tomassi v. Insignia Fin. Grp.,* 478 F.3d 111, 115 (2nd Cir. 2007) (holding that remarks by someone other than decision maker "may have little tendency to show that the decision-maker was motived by the discriminatory sentiment expressed in the remark"). Moreover, as the district court reflected, this isolated comment is too far removed to give rise to an inference that the events in this case arise under an inference of discrimination. (Supp. App. Vol. VII at 1757-58, 1770).

*Ford*, *Denver Post*, and *Wheeler* all establish that at the summary judgment stage the plaintiff must come forward with some actual objective evidence to support her claims of discrimination. As this Court has stated in another context, "summary judgment is the 'put up or shut up' moment in a lawsuit." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 942 (10th Cir. 2022) (citation omitted). The district court's finding that McCray failed to present sufficient evidence to raise an inference of discrimination should be affirmed.

## V.     The district court correctly granted summary judgment on McCray's retaliation claim.

To state a prima facie Title VII retaliation claim, "a plaintiff must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citation and quotation omitted).

The district court granted Secretary Collins's motion for summary judgment because McCray had failed to establish a causal connection between the alleged retaliatory events and her protected activity—McCray meeting with Dr. Cummings. (Supp. App. Vol. VII at 1779-84). And even if she had established such a connection, she failed to demonstrate "that a reasonable employee would have found the

challenged action materially adverse." (Supp. App. Vol. VII at 1785-93). These decisions should be affirmed.

**A.** **The district court correctly concluded that McCray failed to demonstrate that she suffered a materially adverse employment action.**

Title VII does not offer a remedy from *all* retaliation. Instead, a plaintiff must show conduct "that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018) (quoting *Burlington N. & Santa Fe R. Co. v. White*, 548 U.S. 53, 68 (2006)). And in considering this question, the Court is "obliged to bear in mind that Title VII protects individuals not from all retaliation but only from retaliation that produces an injury or harm that itself rises to a level of seriousness." *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (citation omitted). "Requiring this level of adversity is necessary to separate significant from trivial harms, petty slights, minor annoyances and simple lack of good manners[.]" *Id.* (quotation cleaned up). As the Supreme Court has explained, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N.*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

On appeal, McCray suggests that *Muldrow* changes this longstanding standard. Not so. In *Muldrow*, the Supreme Court made clear that the anti-retaliation context is distinct from the anti-discrimination context, so requiring

"significant harm" for a materially adverse action remains valid for reasons "peculiar to the retaliation context." *Muldrow*, 601 U.S. at 357 (quotation cleaned up). Thus, the Supreme Court expressly declined to extend *Muldrow* to the anti-retaliation context because an action that causes harm that is less than significant "will not deter Title VII enforcement and so falls outside the purposes of the ban on retaliation." *Id*.; *see also West v. Butler Cty. Bd. of Educ.*, 2024 WL 2697987, at *2 (11th Cir. May 24, 2024) (holding that *Muldrow* applies only to the anti-discrimination provision of Title VII).

McCray does not advance any argument that her exhausted retaliation claims rise to the level of a materially adverse employment action in her opening brief. That is because they do not.

In general, McCray complains of minor alterations of job responsibilities, perceived petty slights and a lack of good manners. But actions like yelling, holding a coaching session (even if that session is partly critical and in front of a professional mentor), and not allowing McCray to speak during a meeting are not materially adverse actions. *See Walker*, 2021 WL 5113679, at *7 (verbal counselings are typically "too inconsequential to constitute actionable adverse actions"); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1215 (10th Cir. 2008) ("'unruly behavior during a meeting' and derogatory e-mails are unlikely to deter a reasonable employee from making a charge of discrimination."). Indeed, being yelled at "amounts to nothing

more than a 'simple lack of good manners.'" *McCants v. Correct Care Sols., LLC*, No. 16-2787-DDC, 2018 WL 2445157, at *8 (D. Kan. May 31, 2018) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007)). McCray's claim that she received some informal discipline necessarily fails. *Scaife v. U.S. Dept. of Veterans Affairs*, 49 F.4th 1109, 1119 (7th Cir. 2022) (concluding in a retaliation claim, "a documented reprimand alone is not an adverse action '[a]bsent some tangible job consequence'"). And McCray's increased workload claim fails by her own admission that she had no problem completing the allegedly increased workload. (Supp. App. Vol. VII at 1786).

Moreover, the record reveals that some of the allegations advanced by McCray simply did not occur. For example, McCray alleges that she "was given a written reprimand that was unjustified." (Appellant's brief, pg. 53). And other allegations are greatly exaggerated such as McCray's allegation that she was threatened with removal. As the district court recognized, that was a "stretch." (Supp. App. Vol. VII at 1773-75).[11]

---

[11] McCray also advances wholly new allegations on appeal such as that "other less qualified individuals were given higher evaluations, promotions, and supervisory details and/or positions." (Appellant's brief, pg. 53). This allegation was never presented to the district court, and it has no support in the record. This type of issue permeates McCray's brief and should not be considered.

The district court applied the appropriate standard and arrived at the correct conclusion when it determined that no reasonable juror could find that McCray suffered a materially adverse action. This decision should be affirmed.

**B.     The district court correctly concluded that McCray failed to establish that Duda had knowledge of her alleged protected activity.**

Not only must McCray show that the alleged actions were materially adverse, but she must also "come forward with evidence from which a reasonable factfinder could conclude that those who decided to [act against her] had knowledge of [her] protected activity." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *see also Lindsay v. Denver Pub. Sch.*, 88 F.4th 1323, 1328 (10th Cir. 2023) (Plaintiff must "marshal evidence that those who acted against her. . . knew of" his or her protected activity). "After all an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of the antidiscrimination statute." *Lindsay*, 88 F.4th at 1327. At the summary judgment stage, "bare speculation" will not suffice to show that a decisionmaker had knowledge of a protected activity. *Id*. at 1328. And a plaintiff cannot rely upon temporal proximity alone as substitute for "evidence that the [alleged retaliator] knew of the protected conduct." *Id*. at 1330. Indeed, the "proximity between a [protected] activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown

to have been aware of the specific activity." *Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763, 767 (10th Cir. 2013) (brackets in original) (internal quotation marks and citation omitted).

The district court was correct to draw parallels between this case and this Court's decision in *Lindsay* because it is instructive. As the district court summarized:

> The *Lindsay* plaintiff-employee had served on a panel to select a new executive director. While on the panel, one member allegedly made negative, racially discriminatory comments about an executive director candidate. The employee spoke up at the panel to defend the candidate. When the candidate wasn't selected, the employee informed the candidate about the negative and, allegedly, racially discriminating comments. And the candidate then filed charges of discrimination with the EEOC on April 26, 2019, and with the Colorado Civil Rights Division (CCRD) on July 18, 2019. The employee's employment was terminated on July 31, 2019, and the employee then filed claims for retaliation.

(Supp. App. Vol. VII at 1780-81) (citations omitted). The plaintiff-employee in *Lindsay* advanced two arguments in an attempt to establish that the executive director had knowledge of her protected opposition, both of which McCray advances in this case.

First, the plaintiff-employee in *Lindsay* argued that the executive director must have had knowledge of the protected opposition because she had frequent meetings with a person who was on the selection panel and "indisputably had every

opportunity to tell [the executive director] who it was that had objected to the racist conduct." *Lindsay*, 88 F.4th at 1328. This Court rejected that argument because the "suggestion that the two discussed protected action by [the plaintiff-employee] is mere unsupported speculation" and "not a finding" that the executive director "had knowledge." *Id*. at 1328–29.

Like *Lindsay*, McCray argues that Dr. Cummings must have informed Duda that McCray made a complaint of discrimination to him on January 24, 2024, because he later had a meeting with Duda. (Appellant's brief, pgs. 61-62). McCray was not at this meeting and does not know what was said. (App. Vol. I at 266-268). And Dr. Cummings declared under oath that he did not inform Duda specifically about his meeting with McCray, but he did counsel her to take a step back and get out of the weeds. (Supp. App. Vol. II at 381). Nevertheless, McCray speculates that Duda must have been informed because Duda later used the phrase "get out of the weeds." Under *Lindsay*, however, this unsupported speculation does not satisfy McCray's "burden to demonstrate Duda's knowledge of plaintiff's discrimination complaints." (Supp. App. Vol. VII at 344). Moreover, the most that a jury might infer from Duda's "get out of the weeds" comment is that Duda was aware of or had a suspicion that McCray complained about her management style. But that is not a protected activity and cannot serve as a basis for a Title VII retaliation claim.

Second, the plaintiff-employee in *Lindsay* argued that the temporal proximity between her firing and the candidate filing an EEOC claim identifying her as the main witness also establishes knowledge. *Id*. at 1330. This Court rejected this argument because while such temporal proximity may justify "'an inference of retaliatory motive,'" the temporal proximity doesn't provide a substitute for "'evidence that the decisionmakers *knew* of the protected conduct.'" *Id*. (emphasis in original) (quoting *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019)).

Again, like *Lindsay*, McCray also argues that the temporal proximity between this meeting and alleged retaliation "infers that Duda knew of the complaints of harassment." (Appellant's brief, pg. 62). But this Court has squarely rejected that position in *Lindsay*.

In a last-ditch effort to establish the requisite knowledge, McCray advances an entirely new argument on appeal. Now, McCray argues that Duda must have known about and retaliated against her for *another* protected activity—the filing of her informal complaint on or about January 31, 2020. (Appellant's brief, pg. 63). McCray's new argument is a classic bait-and-switch. It was uncontroverted before the district court that the "alleged protected activity for which McCray contends Duda retaliated against her occurred on January 24, 2020 when she met with Duda's supervisor, Dr. Robert Cummings." (Supp. App. Vol. I at 177); (Supp. App. Vol. II at 416). McCray cannot now change her tune because her original theory failed. This

Court does not consider issues raised for the first time on appeal. *See Curtis v. Chester*, 626 F.3d 540, 548 (10th Cir. 2010) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."); *see also Anschutz Land & Livestock Co.*, 820 F.2d at 344 n. 5 ("[W]e should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time. Parties must be encouraged to 'give it everything they've got' at the trial level.").

The district court's finding that McCray failed to show that Duda knew of McCray's alleged protected conduct should be affirmed.

## VI. The district court applied the correct summary judgment standard and did not find facts "against McCray."

In an effort to conjure up an error, McCray argues the district court "wholesale swallowed the facts fed it by [Secretary Collins], ignoring [McCray's]." (Appellant's brief, pgs. 38-39). This argument is unfounded.[12]

First, McCray argues that the district court got it wrong when it reflected that Duda signed and submitted an appeal to the Nurse Promotion Standards Board on

---

[12] Although it did not do so, the district court would have been within its discretion to disregard many of McCray's alleged summary judgment "facts" because more often than not they are not supported by the cited evidence or are legal arguments cast as "facts." Secretary Collins explained this issue in his motion to strike McCray's first summary judgment response, (Supp. App. Vol. II at 406), and his reply to McCray's second summary judgment response, (Supp. App. Vol. VII at 1669, n. 2).

McCray's behalf. This is so, according to McCray, because the district court failed to recognize that McCray had written the appeal. (Appellant's brief, pg. 39). McCray is wrong. The district court explicitly states that "plaintiff wrote, and Duda as plaintiff's direct supervisor, signed and submitted" the appeal. (Supp. App. Vol. VII at 1757). The district court went on to note that Duda also personally spoke to the Nurse Executive to advocate on McCray's behalf, which was uncontroverted. (*Id.*).

Second, McCray then argues that the district court erred because it failed to acknowledge that she had purportedly discussed the alleged discrimination by Duda with Dr. Cummings. (Appellant's brief, pg. 40). McCray is wrong. The district court explicitly provided that in "[d]rawing all inferences in favor of [McCray]" that it would assume "without deciding, that [McCray] engaged in protected opposition" when she spoke with Dr. Cummings. (Supp. App. Vol. VII at 1779).

Third, McCray argues that the district court "accepted whole cloth [Secretary Collins's] assertion that [McCray] suffered no adverse job action by moving to Colorado" because she had a pay increase. (Appellant's brief, pg. 41). But McCray's citation does not point to any finding by the district court. Instead, the alleged offending statement by the district court is a stipulation of fact entered into by the parties as part of the final pretrial order. (Supp. App. Vol. VII at 1734).

The balance of McCray's argument suffers from the same infirmities; they are just plain wrong and unsupported by the record. For example, McCray states that the

VA "conducted a fact-finding regarding Duda and found that Duda kept her supervisors from their missions by giving them busy work." (Appellant's brief, pg. 43). But the cited evidence is a synopsis of McCray's hearsay statements with no reference to any such finding. *See* (Supp App. Vol. V at 1105). This type of issue permeates McCray's appellate brief and her underlying district court briefing.

This court should reject McCray's effort to craft error where none exists. The district court applied the correct legal standard, and the Order granting summary judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 11,432 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), as calculated by the word-counting function of Microsoft Word for Microsoft 365.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14- point Times New Roman, using Microsoft Word for Microsoft 365.


Date: June 6, 2025                              */s/ Brian E. Vanorsby*
                                                Brian E. Vanorsby

## CERTIFICATE OF SERVICE

I certify that on June 6, 2025, the foregoing was electronically filed with the

Clerk of the Tenth Circuit Court of Appeals using the Court's CM/ECF system.


Date: June 6, 2025                       */s/ Brian E. Vanorsby*
                                                 Brian E. Vanorsby